IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HAPPY SUMO SUSHI, INC., a Utah corporation,<br><br>     Plaintiff,<br><br><br><br><br><br><br>     vs. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND PRELIMINARY INJUNCTION |
| YAPONA, INC., a Utah corp.: MUI LY, an individual; MUNKHBAT TSERENNADMID, an individual; BADRAA NASARABAT, an individual; GANBOLD BAASANJAN, an individual; and SHEIK TUSIGSAIKHAN BATAA, an individual,<br><br>     Defendants. | Case No. 2:08-CV-348 TS |

## I. INTRODUCTION

Plaintiff Happy Sumo Shushi (Happy Sumo) seeks an injunction against Defendants' alleged infringing use of Happy Sumo's trade dress in Yapona, a competing sushi bar restaurant owned by Defendant Yapona.

The Court finds that Happy Sumo has met its heightened burden in establishing injunctive relief seeking to change the status quo and, therefore, issues an injunction requiring Yapona to cease using Happy Sumo's trade dress pending a determination of this case on the merits.

## II.  FINDINGS OF FACT

At the preliminary injunction hearing, the parties relied on the evidence submitted in connection with their briefing, several demonstrative exhibits, and their arguments.  For the purposes of this Motion, the Court finds as follows.

Happy Sumo operates sushi bar restaurants in Provo and Salt Lake City, Utah. Defendant Yapona is a company that recently opened a competing sushi bar restaurant named Yapona in the same geographic area as the Provo Happy Sumo. Additional Defendants are Yapona' principals, Defendants Ly and Tserennadmid; and Defendants Nasabarat, Baasanjan, and Bataa.   With the exception of Defendant Ly and Tserennadmid, the individual defendants were formerly employed by Happy Sumo as sushi chefs, but now work for Yapona.

Happy Sumo's restaurants both contain all of its claimed trade dress consisting of the following combination of elements:

•   Red accent wall behind the sushi bar; with contrasting color scheme on the walls throughout the rest of the restaurant; flat panel televisions behind the shushi bar; and chairs with light wood color;[1]

•   Opposite the sushi bar are walls lined with booths with faux framing around each booth and red curtains drawn to each side of the booth that may be closed for

---

[1]Lapinsky Decl. at ¶ 4.

privacy;  The curtains are draped open and held with metal fasteners;  These curtained booths contrast with the sliding wooden doors on each booth in traditional Japanese restaurants;[2]

•       Industrial ceiling with pipes, black track lighting, and other visual hardware;[3]

•       The center of the restaurant has tables covered with black table cloths with light colored chairs and brown craft paper placed over the top of each table cloth;[4]

•       Waiters, waitresses, and shushi chefs are dressed in black, including the aprons;[5]

•       Brown stain on a bare concrete floor.[6]

There are some insignificant differences between the two Happy Sumo restaurants. Those differences include the following: slight differences in the curtain rods and their positioning on the faux framing of the booths;[7] the trim along the bottom of the sushi bar is metal in one,[8] but is an unspecified darker material in the other;[9] and, there are windows in one,[10] but mirrors in the other.[11]  The difference between mirrors and windows, like the

---

[2]*Id*. at ¶ 6.

[3]*Id*. at ¶ 7.

[4]*Id*. at ¶ 8.

[5]*Id*. at ¶ 9.

[6]*Id*. at ¶ 10.

[7]Warner Decl. at ¶ 14 (photographs of curtained faux framed booths in Provo and Salt Lake Happy Sumo restaurants).

[8]*Id*. at ¶ 15 (photograph of Salt Lake City's Happy Sumo's sushi's bar).

[9]*Id*. (photograph of Provo's Happy Sumo's sushi's bar).

[10]*Id*. at ¶¶ 14 and 21 (photographs of windows in Provo's Happy Sumo).

[11]*Id*. at ¶ 16 (photograph of large mirrors in Salt Lake City's Happy Sumo).

differences in exteriors, are the result of the "differing architectural features and requirements of the individual shopping centers,"[12] which "are not subject to control by Happy Sumo."[13]  The mirrors in the Salt Lake City Happy Sumo appear to be a design substitute for windows.

The minor differences between the interiors of the two Happy Sumo locations are insignificant and do not distract from their consistent overall look.

Happy Sumo does not claim exterior elements in its trade dress.  The exterior elements of the Happy Sumo restaurants are controlled by the malls in which they are located.[14]  Accordingly, the Happy Sumo exterior elements differ.  Those differing exterior elements include some elements of the exterior signage.

For purposes of this Motion, Happy Sumo has established its trade dress as set forth above.  Happy Sumo has used its trade dress in Salt Lake City for nearly seven years and for nearly four years in Provo.

Yapona has a red[15] accent wall behind the sushi bar with contrasting color scheme on the walls throughout the rest of the restaurant; flat panel televisions behind the shushi bar; and chairs with light wood color.[16]  In Yapona, the wall across from the sushi bar is

---

[12]Supp. Lapinsky Decl. at ¶ 5.

[13]*Id.* at ¶ 6.

[14]*Id.*

[15]Yapona contends that its accent wall is "red with an orange hue" but in the photographs submitted by both parties it appears to be a red shade similar to that of Happy Sumo's accent wall.

[16]Pl.'s Ex. D and Pl.'s Mem. at xii; Warner Decl. at ¶¶18 and 21 (photographs).

lined with booths with faux framing around each booth and red curtains drawn to each side of the booth that may be closed for privacy.[17]  The curtains are draped open and held with metal fasteners.[18]  Yapona has an industrial ceiling with pipes, black track lighting, and other visual hardware.[19]  In the center of Yapona there are tables covered with black table cloths with light colored chairs and brown craft paper placed over the top of each table cloth;[20]  Yapona's waiters, waitresses, and shushi chefs[21] are dressed in black, including the aprons.[22]  Yapona has a concrete floor stained brown.[23]

Ten of Happy Sumo's customers have remarked on how similar Yapona's appearance is to Happy Sumo's and have questioned Happy Sumo about the relationship between the restaurants. These customers include a business acquaintance of Happy Sumo's owner who went to Yapona because, based on Yapona's visual appearance, he assumed it was a Happy Sumo restaurant.[24]

---

[17]Warner Decl. at ¶18 (photograph of Yapona's curtains on faux framed booths).

[18]*Id.*

[19]Pl.'s Mem. at xiii, ¶ 21 (photograph);  Barlow Decl., Ex. D (photograph).

[20]Pl.'s at xiv, ¶ 22 (photograph); Barlow Decl., Ex. D (photograph).

[21]Warner Decl. at ¶ 21, at 16 (photograph of Yapona sushi chef); Barlow Decl., Ex. D (photograph).

[22]Pl.'s Mem. at xiv, ¶ 22 (photograph); Barlow Decl., Ex. D (photograph).

[23]Barlow Decl., Ex. D (photographs).

[24]Driggs Aff. at ¶¶ 4-6 and 8.

Happy Sumo had a direct 12% drop in sales starting when Yapona opened and a continuing loss of 20-25% since Yapona opened, something that did not result from the opening of any other of the nearby competing sushi restaurants.

On May 5, 2008, Happy Sumo filed the present action alleging Defendants intentionally copied its trade dress and are also using its music play list and trade secret sauce recipes—all in order to take advantage of Happy Sumo's customer good will.  Happy Sumo also brings claims under Utah law for unfair competition, deceptive trade practices, misappropriation of trade secrets, and civil conspiracy.

## III.  STANDARD FOR PRELIMINARY INJUNCTION

In the present Motion, Happy Sumo seeks a preliminary injunction against Yapona's alleged use of Happy Sumo's claimed trade dress.

"'A preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal.'"[25]

> To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. In general, a preliminary injunction is an extraordinary remedy; it is the exception rather than the rule. Moreover, when a preliminary injunction would alter the status quo, such as the injunction at issue in this case, the movant bears a heightened burden

---

[25] *In-n-out Burgers v. Chadders Restaurant,* 2007 WL 193813 * 2 (D. Utah June 29, 2007) (quoting *Nova Health Systems v. Edmondson,*  460 F.3d 1295, 1298 (10th Cir. 2006)) (further quotations omitted).

and must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms.[26]

Other such "disfavored" preliminary injunctions are those that are mandatory and those that "give the movant all relief it could obtain after a trial on the merits."[27]

The elements of trade dress are as follows:

Trade dress refers generally to the total image, design, and appearance of a product and "may include features such as size, shape, color, color combinations, texture or graphics."  It is well settled that restaurants and similar establishments may have a total visual appearance that constitutes protectable trade dress.

* * *

To sustain a claim for trade dress infringement, [Happy Sumo] must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that [Yapona's] product or service creates a likelihood of consumer confusion.[28]

The Supreme Court addressed trade dress in *Two Pesos, Inc. v. Taco Cabana, Inc.*,[29] a case involving competing chains of Mexican food restaurants:

─────────────────

[26]*General Motors Corp. v. Urban Gorilla, LLC,*  500 F.3d 1222, 1226 (10th Cir. 2007) (trade dress case denying preliminary injunction where plaintiff failed to meet burden of showing likelihood of success on merits) (quotation marks and citations omitted).

[27]*In-n-out Burgers*, 2007 WL 193813 at *3 (quoting *Nova Health Systems*, 460 F.3d at 1292 n.5 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004))).

[28]*Clicks Billiards, Inc. v. Sixshooters, Inc.*. 251 F.3d 1252, 1257-58 (9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A.*, Inc., 4 F.3d 819, 822 (9th Cir. 1993)) (internal citations and footnote omitted).

[29]505 U.S. 763 (1992).

Secondary meaning is used generally to indicate that a mark or dress "has come through use to be uniquely associated with a specific source."  "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself."[30]

"[P]roof of secondary meaning is not required to prevail on a claim under § 43(a) of the Lanham Act where the trade dress at issue is inherently distinctive."[31]

"Proof of intentional copying raises an inference of likelihood of confusion."[32]

## IV.  LIKELIHOOD OF SUCCESS ON THE MERITS

In response to Happy Sumo's Motion for a Preliminary Injunction, Yapona contends that Happy Sumo has not established its likelihood of success on the merits.  Yapona argues that the elements that Happy Sumo claims as its trade dress are ubiquitously used in other restaurants[33] and therefore cannot achieve the status of protectable trade dress; that Yapona's restaurant has several distinguishing features; that there is no evidence the claimed trade dress has acquired "secondary meaning;" that there is no secondary meaning because there are differences between the two Happy Sumo restaurants, especially their exteriors; and that the claimed trade dress is "functional" consisting of a functional selection of features available to all restaurants.

---

[30]*Id*. at 766 n.5.

[31]*Id.* at 776.

[32]*Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 941 (10th Cir.1983) (quotation and citation omitted).

[33]The declaration of Yapona's expert Walker has color photographs of the other restaurants as well as comparison photographs of Happy Sumo and Yapona.

As noted above, for the purposes of the preliminary injunction, the Court finds that Happy Sumo has established its distinctive and protectable trade dress.  Happy Sumo's "total image, design, and appearance" create a protectable trade dress.

The differences between the two Happy Sumo restaurants do not undercut the distinctiveness of its trade dress.  The differences in the exteriors of the two Happy Sumo restaurants are not relevant because Happy Sumo is not claiming the exterior as part of its trade dress.  As found above, and discussed below, the other differences are insignificant and do not detract from the consistent overall look of Happy Sumo's restaurants.

Yapona contends Happy Sumo cannot establish its claimed trade dress because numerous restaurants use that alleged trade dress.  Although Yapona has shown that other restaurants use one or more of the individual elements of the trade dress, such as the  black dress of employees, the industrial ceiling with track lighting, the brown paper table cloths, and the red walls, Yapona does not show a single restaurant with the entire combination that makes up the claimed trade dress.  Each of Yapona's examples of the use of elements of the trade dress differs in key elements.  For example, the appearance of Takashi's design, with its use of all black chairs, has an entirely different overall look.  Only one of Yapona's examples of other restaurants uses curtains as an important visual element. Yet that restaurant[34] does not share Happy Sumo's distinctive trade dress. For

---

[34]Baxter Decl. at ¶¶ 27, at 23-25 (photographs).

example, that restaurant's faux framed booths are not curtained.[35]  Instead, that restaurant uses its curtains to mark the entrance to an alcove with several tables[36] and an entrance to a separate room containing many tables.[37]  The curtains in that restaurant hang straight, are not drawn to each side, and are not held with metal fasteners. The curtained alcove in that restaurant contains several tables and is not a curtained booth containing one table as in Happy Sumo and Yapona.  As a result, the curtained alcove in that restaurant does not have the same visual look of the Happy Sumo's and Yapona's faux framed booths. Further, that restaurant's industrial ceiling with track lighting is partially covered with material draped or tented to visually separate areas of the main restaurant as well as the separate room.[38]

Yapona claims that even if Happy Sumo has established its claimed trade dress, there are significant differences between its appearance and the Happy Sumo trade dress. Yapona contends that its accent wall behind its sushi bar is red with an orange hue rather than red; that its light colored chairs have black rather than light colored seats; that its bar chairs have no metal, rather than containing metal like Happy Sumo's bar chairs; that it has no soffit or lowered ceiling above its sushi bar, unlike the situation above Happy Sumo's sushi bars; that its counter tops are made of material different from Happy Sumo's counter

---

[35]*Id*. at 22.

[36]*Id*. at 23.

[37]*Id*. at 23.

[38]*Id*. at 25-26.

tops; that it has "Asian collectibles" unlike Happy Sumo which has pictures of sumo wrestlers.

The Court is unpersuaded by these attempts to distinguish Yapona.  Except for differences in lighting, the photographs of the two restaurants show the color of the accent walls at Yapona and Happy Sumo to be substantially the same.  The sushi counters are made of different materials but in the photographs they have a similar visual look.  The overall look and feel of the chairs is very similar.  Because Yapona, like Happy Sumo, uses black tablecloths, Yapona's black seats on its chairs do not stand out visually.  Despite the minor differences Yapona points out, the Court finds that Yapona's "total image, design, and appearance," including the faux framed curtained alcoves, are so similar that the total visual appearance is the same.

Yapona next argues that Happy Sumo trade dress is functional.  Yapona relies heavily on the following language from *Hartford House v. Hallmark Cards, Inc.*,[39]

> In *Brunswick*, the court enunciated the test for determining functionality: Whether the feature is functional should turn on whether the protection of the feature would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods.[40]

> However, as *Hartford House* also makes clear:

> When the *Brunswick* test is applied to a combination of features, the issue of functionality turns on whether protection of the combination would hinder competition or impinge upon the rights of others to compete effectively.

---

[39]846 F.2d 1268 (10th Cir. 1988). The trade dress at issue in *Hartford House* was for greeting cards.

[40]*Id*. at 1272 (quoting *Brunswick Corp. v. Spinit Reel Co*., 832 F.2d 513, 519 (10th Cir. 1987)) (quotation marks and citations omitted).

As indicated above, a trade dress may be a composite of several features in a certain arrangement or combination which produces an overall distinctive appearance. In this context, the question is whether the combination of features comprising the trade dress is functional. A combination of features may be nonfunctional and thus protectable, even though the combination includes functional features.

\* \* \*

When the *Brunswick* test is applied to a combination of features, the issue of functionality turns on whether protection of the *combination* would hinder competition or impinge upon the rights of others to compete effectively.

\* \* \*

[T]he availability of alternative appealing designs is a key factor in determining that a trade dress is nonfunctional. [41]

Applying the entire test from *Hartford House*, the Court finds that Happy Sumo's trade dress is nonfunctional although many of its elements (floor, walls, flat screen TV, privacy booths, table cloths, and employee uniforms) are functional.  However, Happy Sumo's combination of the functional features is nonetheless protectable.

Under our test, the claim may still be made that without a particular identifying design or feature [or combination of features,] a second-comer may be less effectively able to compete.  If that feature [or combination of features] must be slavishly copied in order to have an equally functional product, then the feature [or combination] is not entitled to protection.  But if the feature [or combination of features] enables the second-comer simply to market his product more effectively, it is entitled to protection.

This interpretation does not limit functional features to those essential to a product's operation. Because a function of certain products is aesthetic appeal, a feature intrinsic to the aesthetic appeal of those products may not be entitled to trademark protection. Although the determination of functional in this setting may be difficult, the decision should nevertheless rest on

---

[41]*Id*. at 1272-72.

whether alternative appealing designs or presentations of the product can be developed.[42]

In the present case it is the Court's determination that the combination of features claimed as trade dress by Happy Sumo is not functional and would in no way harm competition because there are so many other alternative appealing designs available to a competing restaurant.   Yapona's own examples of other restaurants that contain some of the same elements, yet do not infringe the trade dress, show the many alternative appealing designs or presentations that can be and have been developed to market those competing restaurants.

As noted above, Happy Sumo has shown actual customer confusion, including confusion by a business acquaintance of Happy Sumo's owner who went to Yapona because he thought it was a Happy Sumo restaurant.

Happy Sumo has also shown confusion by evidence of the direct 12% drop in sales starting when Yapona opened and a continuing loss of 20-25% since Yapona opened, something that did not result from the opening of any of the other nearby competing sushi restaurants.  Further, consumer confusion is especially likely where, as in the present case, there is a great similarity between the products and services.[43]

Yapona argues that there no likelihood of confusion because sushi restaurant customers are notoriously selective and because of differences in marketing.   The Court

---

[42]*Id.* at 1273.

[43]*King of the Mountain Sports v. Chrysler Corp.*, 185 F.3d 1084, 1092 (10th Cir. 1999).

notes there is no evidence of the selectiveness of sushi customers sufficient to establish the degree of attention they would usually give in patronizing a restaurant.  Therefore, the Court need not address the sophisticated consumer argument.   The evidence of the respective internet advertising by Happy Sumo and Yapona merely establishes they both market through the internet—establishing similarity, not dissimilarity of marketing.

The Court finds that Happy Sumo has made a strong showing of likelihood of success on the merits of its claim of trade dress infringement.

## V.  IRREPARABLE HARM

The parties disagree on whether the recent Supreme Court case *Ebay Inc. v. MercExchange, LLC*,[44] eliminated the rule that a party seeking a preliminary injunction was entitled to a presumption of irreparable harm upon proving a likelihood of success on the merits of infringement of patents or trademarks and trade dress.   Yapona argues *eBay* eliminated the presumption.  Happy Sumo relies on two cases, *Abercrombie & Fitch Co. v. Moose Creek, Inc.*[45] and *Novozymes A/S v. Genencor Intern., Inc.*,[46] "for the proposition that *eBay* does not preclude the presumption of irreparable harm upon a finding of a likelihood of success."[47]  However, *Abercrombie* does not discuss the effect of *eBay* on the presumption, and *Novozymes* provides: "the Supreme Court in *eBay* did not state that loss

---

[44]547 U.S. 388 (2006) (rejecting Federal Circuit's "general rule that court's will issue *permanent* injunctions against patent infringement except in exceptional cases") (emphasis added).

[45]486 F.3d 629, 633 (9th Cir. 2007).

[46]474 F.Supp. 2d 592, 612 (D. Del. 2007).

[47]Pls' Reply Mem. at 8.

14

of the right to exclude could not be irreparable harm.  Rather, the Court simply rejected the proposition that the patentee's right to exclude should *always* lead to injunctive relief for patent infringement."[48]

As noted in a recent patent case in this district, *Voilé Manufacturing Corp. v. Dandurand*,[49] the majority of courts have held that "*eBay*, eliminated the presumption of irreparable harm in preliminary injunction cases, involving patents."[50]

The Court need not determine if *eBay* also eliminated the presumption in a trade dress case because, irrespective of any presumption, Happy Sumo has established irreparable harm.  On the facts of the present case the Court finds that Happy Sumo has shown irreparable harm by  the loss of good will, business reputation, and loss of control over its trade dress.   Unlike the undisputed loss of business, money damages will not adequately address these harms.

## VI.   PUBLIC INTEREST

The Court finds the public interest is not implicated.

## VII.  BALANCE OF HARMS

At the hearing Defendants did not oppose Happy Sumo's proffer of the estimated cost and time involved in making  changes in Yapona so that it no longer infringes Happy Sumo's trade dress.  Accordingly, the Court has accepted that proffer and makes the

---

[48]474 F.Supp. 2d at 612 (emphasis added).  *Novozymes* involved a request for a permanent injunction after judgment of infringement.

[49]551 F.Supp. 2d 1301 (D. Utah 2008).

[50]*Id*. at 1306.

following findings:  It would cost between $15,000 and $20,000 to make all of the changes requested by Happy Sumo.  The changes could be made in one day or over one night.

As established by the proffer it is not prohibitively expensive for Yapona to change its decor so as not to infringe Happy Sumo's trade dress.  This is especially true where the Court orders, below, that Defendants shall make changes to only some of the elements of the trade dress pending determination on the merits.  The Court believes these changes will adequately protect Happy Sumo from the infringement of its trade dress pending a decision on the merits.  The changes can be made in a short period of time and do not require Yapona to close its business in order make the changes.

Based on these findings, the Court finds the balance of harm to Yapona for necessary changes is much less than the irreparable harm that Happy Sumo has shown it will suffer from the continued infringement.  The Court finds that Happy Sumo has met is heightened burden of making a strong showing on the balance of harms.  In so ruling, the Court notes that the Preliminary Injunction does not afford Happy Sumo all of the relief it requested.  For example, the Court will not require any change in the flooring or enjoin the use of craft paper on the tablecloths pending a determination on the merits of this case.

VIII.  BOND

The Court has considered the undisputed proffer in connection with the appropriate bond.  The Court finds that Happy Sumo shall post a bond in the amount of $15,000 in order to have the injunction issue.

IX. ORDER AND PRELIMINARY INJUNCTION

The Court having determined that Happy Sumo is entitled to a preliminary injunction, it is therefore

ORDERED that Plaintiff's Motion for a Preliminary Injunction (Docket No. 4) is GRANTED.  It is further

ORDERED that Defendants, their officers, agents, servants, employees, attorneys, and any persons acting in active concert or participation with them who receive actual notice of this order by personal service or otherwise shall not use the Happy Sumo Trade Dress in connection with restaurant services, and specifically shall not use any of the following elements in connection with the Yapona restaurant, pending conclusion of this litigation on the merits:

a.     any shade of red walls behind the sushi bar;

b.     light wood chairs, unless those chairs have covered seats;

b.     flat panel televisions behind the sushi bar;

c.     curtains on the booths drawn to each side of the booth;

d.     an industrial ceiling with pipes, black track lighting, and other visible hardware, unless such ceiling is draped in fabric;

e.     tables with black table cloths with light colored chairs, except light chairs that have covered seats;

f.     waiters, waitresses, and sushi chefs dressed entirely in black clothing.

17

Said injunction shall become effective immediately upon the posting of a bond in the amount of $15,000 by Plaintiff Happy Sumo.

DATED   August 5th, 2008.

BY THE COURT:

_____

TED STEWART
United States District Judge